**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

ALEESHA M. R.,

                            Plaintiff,

v.                                            5:24-CV-00205 (PJE)

COMMISSIONER OF SOCIAL
SECURITY,

                            Defendant.

---

**APPEARANCES:**                                    **OF COUNSEL:**

AMDURSKY, PELKY FENNEL AND WALLEN, P.C.    AMY CHADWICK, ESQ.
26 East Oneida St.
Oswego, New York 13126
Attorneys for Plaintiff

SOCIAL SECURITY ADMINISTRATION            NAHID SOROOSHYARI, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, Maryland 21235
Attorney for Defendant

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

Plaintiff Aleesha R.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") denying her application for Supplemental Security Income ("SSI"). (*See* Dkt. No.

---

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify plaintiff by first name and last initial.

1.) The parties consented, in accordance with 28 U.S.C § 636(c), Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 73, N.D.N.Y. Local Rule 72.2(b), and General Order 18, to review of this matter by a Magistrate Judge, with direct review by the Second Circuit Court of Appeals in the event of an appeal. (Dkt. No. 5.) Both parties have filed briefs. (Dkt. Nos. 9, 11.) Oral argument was not heard. For the reasons discussed below, the matter is reversed and remanded for further administrative proceedings.

I.  RELEVANT BACKGROUND

A.  Procedural History

On August 24, 2021, Plaintiff filed an application for SSI, alleging disability dating from September 8, 2005. (Administrative Transcript ("T.") 186.[2]) Her application was denied initially on February 14, 2022, and upon reconsideration on June 7, 2022. (T. 74, 87.) Plaintiff then requested a hearing, where she appeared with her attorney, Amy Chadwick, and testified on January 12, 2023, before Administrative Law Judge ("ALJ") Robyn L. Hoffman. (T. 155-59; *see also* T. 27-43.) At the hearing and through a pre-hearing brief, Plaintiff amended her alleged onset date to August 24, 2021. (T. 32, 299.) The ALJ issued an unfavorable decision on March 8, 2023. (T. 15-22.) This became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on January 22, 2024. (T. 1-3.) Plaintiff timely filed this appeal on February 12, 2024. (Dkt. No. 1.)

B.  Plaintiff's Intellectual Function Background

---

[2] The Administrative Transcript is found at Docket Number 8. Citations to the Administrative Transcript will be referred to as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers the Court's CM/ECF electronic filing system automatically assigns. All other page references to Docket entries refer to the pages assigned by the Court's CM/ECF electronic filing system, located at the header of each page.

As of the date of the ALJ's decision, Plaintiff was 19 years old. (T. 264.) She attended special education classes while in school. (T. 34.) She has limited work history in 2019 and 2020 with earnings of less than $40.00 as a dishwasher. (T. 194, 196.)

On October 11, 2007, at the age of four, Plaintiff received her first Committee on Preschool Special Education Multidisciplinary Evaluation with Little Lukes, a preschool and childcare center. (T. 306-17.) She was referred by her parents in conjunction with her Head Start program due to concerns with her speech sound production skills. (T. 306.) The evaluating psychologist administered various intellectual function tests including, the Wechsler Preschool and Primary Scale of Intelligence, 3rd Edition ("WPPSI-III"); the Developmental Assessment of Young Children; the Preschool Language Scale, 4th Edition ("PLS-4"); and the Goldman Fristoe Test of Articulation, 2nd Edition ("GFTA-2"). *Id*. The WPPSI-III indicated Plaintiff tested low average in nonverbal skills and average in verbal reasoning. (T. 310.) Plaintiff scored two points below the average range on the Expressive Language PLS-4, and one point below average on Receptive language. (T. 311-12.) She was unable to complete analogies, name objects when the object is described, understand *more* and *most*, qualitative concepts (shapes), and spatial concepts (under, in back of, next to, in front of). *Id*. According to the Weiss Intelligibility Scale, Plaintiff's results of the GFTA-2 for communication showed she was delayed by thirty-four months in her speech production and phonology skills. (T. 313-14.) Based on Plaintiff's performance, the doctors concluded she should be considered a preschooler with a disability. (T. 314.)

Plaintiff received intensive levels of Academic Intervention Services ("AIS") and was referred to the school's intervention team each year from kindergarten to third grade with minimal results. (T. 340.) In February 2012, Plaintiff was re-evaluated to determine if academic

3

and behavior concerns constituted an educational disability. (T. 336.) Her performance on the Woodcock-Johnson III Normative Update Tests of Achievement, indicated that she was functioning in the low-average range of intelligence, obtaining a Full-Scale IQ of 81. (T. 341.) Achievement testing indicated that Plaintiff performed below average in academic areas of reading decoding, reading comprehension, math calculation, math applications, spelling, and written language. (T. 343.) In light of Plaintiff's history and the results of the achievement testing, the examiner recommended she be identified as a child with an "other health impair[ment,]" and participate in an integrated co-teaching classroom for English Language Arts, mathematics, and speech and language therapy services. *Id*.

Later, Plaintiff's sixth-grade assessment indicated greater cognitive delays, with a Full-Scale IQ score of 59. (T. 324.) She had significant difficulty retaining information and sustaining attention. (T. 333.) It was concluded, given Plaintiff's significantly-delayed cognitive abilities, significantly-underdeveloped adaptive skills, medical history, significant communication weaknesses, and need for a highly-specialized educational program, that she be designated as a child with an Intellectual Disability and participate in the New York State Alternative Assessment. *See id*. Plaintiff received a three-year reevaluation which confirmed her global delays and classification. (T. 350.) She was ungraded in her core classes (T. 206, 345, 350, 352, 356), and due to medical difficulties, she had significant absences that impacted her learning. (T. 207-11, 215, 300-01, 346, 353.) Further, she did not attempt online learning nor contact the school during her absences. (T. 353.) Plaintiff's report cards indicate that she passed, made satisfactory progress, or had a final average of 65 or higher throughout her first three years in high school. (T. 353.) However, she received failing marks for the second period of English 12 and Math 12. *See id*.

4

The records demonstrate that Plaintiff's latest cognitive testing in 2021 was "inconsistent with previous cognitive testing as [she] has a well-documented history of lower-than-average range performance across both verbal and non-verbal tasks"; however, on this test, she scored moderately below average with a 74. (T. 355.) This score is still "lower than would be expected among her same aged peers." (T. 357.) Plaintiff's grandmother and teacher were asked to complete the Vineland Adaptive Behavior Scales, Third Edition, to quantify plaintiff's adaptive functioning abilities. *Id*. The results showed that her writing abilities, daily living skills, and social skills displayed at home and at school were lower than would be acceptable given her age. *Id*.

**C. The ALJ's Decision**

In her March 8, 2023, decision, the ALJ made the following three findings of fact and conclusions of law. (T. 17-22.) First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 24, 2021, the amended alleged onset date. (T. 17.) Second, the ALJ found that Plaintiff has medically-determinable impairments of intellectual impairment and epilepsy. *Id*. Third, the ALJ found that Plaintiff does not have an impairment or combination of impairments that has significantly limited, or is expected to significantly limit, her ability to perform basic work-related activities for twelve consecutive months; thus, the ALJ concluded that the claimant does not have a severe impairment or combination of impairments. (T. 18.) Specifically, the ALJ stated, "[b]ecause the claimant's medically determinable mental impairment causes no more than 'mild' limitation in any of the functional areas <u>and</u> the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic mental work activities, it is 'non-severe' (20 CFR § 416.920a(d)(1))." (T. 20.) Therefore, the ALJ concluded that Plaintiff is not disabled. *Id*. at 22.

5

## II.    LEGAL STANDARDS

### A.  Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *See Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citation omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.3d 983, 985 (2d Cit. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *See Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination whether there is substantial evidence in the record to support the decision.  *See* 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *See Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Featherly*, 793 F. Supp. 2d at 630; *see Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides,

6

because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  Where substantial evidence supports the ALJ's findings, they must be sustained "even where substantial evidence may support the plaintiff's positions despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

### B. Standard for Benefits

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. *See* 20 C.F.R. § 416.920(a)(4) (2015).  Under that five-step sequential evaluation process, the decision-maker determines:

7

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

## III.   ANALYSIS

Plaintiff argues that the ALJ's finding at step two that plaintiff's intellectual impairment was non-severe is not supported by substantial evidence. (Dkt. No. 9 at 7-11.) Specifically, she asserts the ALJ ignored significant portions of the record to support her conclusion. (Dkt. No. 9 at 9.) Defendant argues that the ALJ's conclusion was supported by substantial evidence, and she reasonably relied on prior administrative medical findings and opinions. (Dkt. No. 11 at 6-17.) For the reasons that follow, the Court finds that the ALJ's determination was not supported by substantial evidence and must be remanded for further administrative proceedings.

### A. SUBSTANTIAL EVIDENCE DOES NOT SUPPORT THE ALJ'S FINDING OF A NON-SEVERE INTELLECTUAL IMPAIRMENT

The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis. *See Rhondalee T. v. Berryhill*, No. 3:17-CV-1241 (CFH), 2019 WL 1100267, at *5 (N.D.N.Y. Mar. 8, 2019) (citing *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012)). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* 20 C.F.R.

§§ 404.1521(a), 416.921(a) (stating that an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities).

The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b). "Severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *See Monique Danielle W. v. Comm'r of Soc. Sec.*, No. 5:18-CV-184 (DNH), 2019 WL 2358529, at *4 (N.D.N.Y. June 4, 2019) (quoting *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012)).

An ALJ is to make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Mark K. v. Comm'r of Soc. Sec. Admin.*, No. 5:18-CV-627 (GLS), 2019 WL 4757381, at *1 (N.D.N.Y. Sept. 30, 2019) (quoting *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999)). Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment . . . ." Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985). However, a combination of "slight abnormalities," having no more than a minimal effect on a plaintiff's ability to work, will not be considered severe. *Id*. The ALJ must assess the impact of the combination of impairments, rather than asses the contribution of each impairment to the

9

restriction of activity separately, as if each impairment existed alone. *See id*. The step two analysis "may do no more than screen out *de minimis* claims." *Vogt o/b/o Vogt v. Comm'r of Soc. Sec.*, No. 18-CV-231 (LJV), 2019 WL 4415277, at *4 (W.D.N.Y. Sept. 16, 2019) (quoting *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995)). If the disability claim is more than *de minimis*, the ALJ must undertake the remaining analysis of the claim at step three through five. *See Dixon*, 54 F.3d at 1030.

Here, the ALJ noted Plaintiff's activities, including the fact that she: had a boyfriend; performed all personal care tasks; helped take care of pets; prepared simple meals; washed dishes; did some cleaning; could load and unload the washer and dryer; could interact with others in person, on the phone, and by text message or video; watched television; listened to the radio; read; and went for walks. (T. 20.) The ALJ relied on Plaintiff's daily activities to support her reasoning for agreeing with State Agency Psychologist S. Bhutwala, PhD's opinion, that Plaintiff has "no more than 'mild' limitations in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic mental work activities." *Id*.

Regarding the domain of understanding, remembering or applying information, 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.05(B)(2)(a), the relevant regulations provide

> This area of mental functioning refers to the abilities to learn, recall, and use information to perform work activities. Examples include: Understanding and learning terms, instructions, procedures; following one- or two-step oral instructions to carry out a task; describing work activity to someone else; asking and answering questions and providing explanations; recognizing a mistake and correcting it; identifying and solving problems; sequencing multi-step activities; and using reason and judgement to make work-related decisions.

*Id*. §12.00(E)(1).

Plaintiff's significant deficits in understanding, remembering and applying information is well-established in the record. (T. 35-37, 212-13, 217, 221, 245, 300, 321, 356.) In particular, throughout her school years, Plaintiff repeatedly was reported as needing to have questions read to her. (T. 35, 212, 217, 245.) Her classwork and assignments were modified to meet her individual needs. (T. 208.) According to an October 4, 2010, memorandum prepared by a Fulton City Schools Psychologist, Plaintiff had been receiving AIS (Academic Intervention Services) support for reading since kindergarten. (T. 221.) She had significant difficulty retaining information and would sometimes forget newly-learned information within minutes. (T. 300, 321.) In 2021, Plaintiff's teachers noted that she experienced difficulties in using numerical concepts in practical ways, such as with time, dates, and money, and also experienced difficulties in reading and writing. (T. 356.) Her last assessment in August 2021 noted that she was still participating in the NYS Alternative Assessment Program for students with severe disabilities. (T. 212-13.) Plaintiff had numerous accommodations, including placement in a 12:1:4 classroom setting with a modified curriculum, small group instruction, extra time to complete tasks and process information, having verbal directions repeated, all material above her level read to her, and instructor's checks for understanding. *Id*. At the administrative hearing, Plaintiff testified that information would need to be taught to her repeatedly because she had a hard time understanding and would forget information immediately. (T. 35.)

Other than Dr. Bhutwala's opinion, based upon Dr. Noia's findings, the ALJ's determination that Plaintiff has only a mild limitation as to understanding, remembering, and applying information as provided under 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05(B)(2)(a) is inconsistent with the school records.

11

With regard to the domain of concentration, persistence, and maintaining pace, *Id*. § 12.05(B)(2)(c), the relevant regulation provides

> this area of mental functioning refers to the abilities to focus attention on work activities to stay on task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day.

*Id*. § 12.00(E)(3).

School records show Plaintiff exhibited characteristics associated with attention deficit disorder as she is easily distracted, and often does not complete work in a timely manner. (T. 221, 356.) A 2018 assessment noted a need for significant prompting and modeling for any class taken outside of the supports of the 12:1:4 classroom. (T. 345.) Plaintiff was able to work independently [in class] but needed prompts to continue working. (T. 347.) She testified that she could stay on track for fifteen minutes and needed reminders to stay on task. (T. 37.) Plaintiff received numerous accommodations including a 12:1:4 classroom, modified curriculum, and additional time on tasks and tests. (T. 212-14.) Although Plaintiff testified that she does not need a reminder to take her medication (T. 42), the record provides that when her family attempted to have plaintiff be responsible for taking the medication herself, she was unable to do so, resulting in an increase of seizures. (T. 423, 458.)

Accordingly, substantial evidence in the record is not consistent with Dennis Noia, PhD, and Dr. Bhutwala's medical opinions. The ALJ found their medical opinions persuasive because they were consistent with one another. (T. 20.) "Dr. Noia's opinions are supported by his own clinical findings while Dr. Bhutwala's are supported by his narrative analysis of the evidence

. . ." *Id.* The ALJ specifically noted, "records from the claimant's own medical sources do not document any mental diagnoses or evidence significant mental limitations." (T. 20.) However, Plaintiff's school records from the school psychologist do consistently demonstrate what appear to be significant mental limitations. (T. 207-08, 327, 348, 358). A school psychologist is a medical source; thus, "the ALJ was required to weigh and evaluate [the school psychologist's] statement as a medical opinion." *Tyler W. v. Comm'r of Soc. Sec.*, No. 3:22-CV-01345 (CFH), 2024 WL 1075209, at *4 (N.D.N.Y. Mar. 12, 2024) (citing 20 C.F.R. §§ 404.1502(d), 416.902(i); *Vilma S. v. Comm'r of Soc. Sec.*, No. 1:23-CV-00025 (GRJ), 2024 WL 515259, at *3 (S.D.N.Y. Feb. 9, 2024) ("The ALJ is required to 'articulate how [he or she] considered the medical opinions' and state 'how persuasive' he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors.") (additional citation omitted)).

     A cursory review of Plaintiff's school records indicates a serious intellectual deficiency, analysis of which the ALJ should have more fully developed. As Plaintiff contends, and this Court agrees, the ALJ's "analysis ignores significant portions of the record and results in a decision not supported by substantial evidence." (Dkt. No. 9 at 9.) The ALJ did not explicitly address the lower scores, including reading and math scores in 2018 placing her in the first and second percentiles, and the full details of the 2021 testing which showed verbal intelligence in the 0.7% and composite score in the 4%, that her 2021 school records reflected that she was reading and performing math at a second-grade level, and that she required a 12:1:4 classroom. (*Id.* at 11) Indeed, "[t]his can indicate a serious misreading of the evidence, be[ing] a failure to take all evidence into consideration . . ." *Id.* (*citing Dezarea W. v. Comm'r of Soc. Sec.*, No. 6:21-cv-01138 (MAD/TWD), 2023 WL 1960528, at *8 (N.D.N.Y. Feb. 13,2023); *Younes v.*

*Colvin*, No. 1:14-CV-170 (DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015). "A full and fair hearing in accordance with beneficent purposes of the Social Security Act requires consideration of all relevant evidence." *Baez ex rel. D.J. v. Colvin*, No. 6:13-CV-142 (DNH/TWD), 2014 WL 1311998, at *9; *citing Echevarria v. Sec'y of Health & Human Services.*, 685 F. 2d 751, 755 (2d Cir. 1982) (concluding that a reviewing court must determine whether the ALJ adequately protected the claimant's rights by ensuring that all of the relevant facts were sufficiently developed and considered). The full school reports are relevant evidence; thus, the contradictory evidence in the record and other inadequacies in the ALJ's analysis frustrate meaningful review. "'An ALJ's failure to properly consider a medical opinion is harmless error where the medical opinion is 'essentially duplicative' of other evidence, or is not 'significantly more favorable' to [the p]laintiff than other evidence considered by the ALJ, or was otherwise consistent with the ALJ findings.'" *Tyler W. v. Comm'r of Soc. Sec.*, No. 3:22-CV-01345 (CFH), 2024 WL 1075209, at *6 (N.D.N.Y. Mar. 12, 2024) (quoting *Tammy T. v. Kijakazi*, No. 5:21-CV-1, 2022 WL 71995, at *13 (D. Vt. Jan. 7, 2022)). Here, the ALJ's failure to properly consider all of the school psychologist's and resulting testing limitations is not harmless as such evidence was not "essentially duplicative of other evidence." *Id.* Thus, the Court concludes that Plaintiff's school records contain ample evidence of greater than de minimis intellectual deficiency, and the case must be remanded for those records' full and proper consideration.

### B. ADDITIONAL TESTING REQUIRED TO RESOLVE INCONSISTENT IQ SCORE

#### 1. Relevant Legal Standard

14

In general, a consultative examination is used to "try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision" on the claim. *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 32 (2d Cir. 2013) (summary order) (citing 20 C.F.R. § 416.919a(b)); *see Martinez v. Colvin*, 286 F. Supp. 3d 539, 543 (W.D.N.Y. 2017) (citing 20 C.F.R. § 404.1519a(b)(1)) ("An ALJ may order a consultative examination when '[t]he additional evidence needed is not contained in the records of medical sources.'"). The ALJ has discretion to order a consultative examination to further develop the evidentiary record. *See Phelps v. Colvin*, 20 F. Supp. 3d 392, 401 (W.D.N.Y. 2014) ("The ALJ has discretion on a case-by-case basis to determine whether a consultative examination is needed, and is only required to order such an examination where the examination is necessary to resolve a conflict or ambiguity in the record."); *see Serianni v. Astrue*, No. 6:07-CV-250 (NAM), 2010 WL 786305, at *5 (N.D.N.Y. Mar. 1, 2010) (citing *Hughes v. Apfel*, 992 F. Supp. 243, 248 (W.D.N.Y. 1997)); *see* 20 C.F.R. § 416.917.

Failure to obtain a consultative examination where it is necessary for the ALJ to make an informed decision is error warranting remand. *See Falcon v. Apfel*, 88 F. Supp. 2d 87, 90-91 (W.D.N.Y. 2000). However, the ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need. *See Tankisi*, 521 F. App'x at 32; *see also Lefever v. Astrue*, No. 5:07-CV-622 (NAM/DEP), 2010 WL 3909487, at *7 (N.D.N.Y. Sept. 30, 2010), *aff'd* 443 F. App'x. 608 (2d Cir. 2011). Courts in this Circuit have remanded for intellectual testing where the record did not contain objective testing, the plaintiff had significant educational difficulties (only completing the sixth grade), never held employment, and was unable to perform tasks such as learning to drive or manage finances. *See Wallace v. Colvin*, 120 F. Supp. 3d 300, 305 (W.D.N.Y. 2015); *see also Dufresne v. Astrue*, No. 5:12-CV-00049 (MAD/TWD),

15

2013 WL 1296376, at *1 (N.D.N.Y. Mar. 8, 2013), *report and recommendation adopted*, No. 5:12-CV-0049, 2013 WL 1289759 (N.D.N.Y. Mar. 27, 2013) (holding that the ALJ failed to develop record by declining to order intelligence evaluation where record contained evidence of the plaintiff's limited intellectual functioning, including the plaintiff's failure to graduate from high school or obtain GED, and opinion of consultative examiner that the plaintiff suffered from cognitive delays and estimating his intelligence to be in the deficient range); *see Laveck v. Astrue*, No. 5:10-CV-1355 (RFT), 2012 WL 4491110, *6 (N.D.N.Y. Sept. 28, 2012) (finding that the ALJ failed to develop record by not ordering an intelligence exam where the ALJ failed to discuss the plaintiff's learning disability, the plaintiff testified that she had poor school performance, and consultative psychiatric exam suggested low-average cognitive functioning).

Generally, is it presumed that an IQ score is an accurate reflection of an individual's general intellectual functioning, unless evidence in the record suggests otherwise. *See* 20 C.F.R § 404 Subpt. P. App. 1 § 12.00(H)(d). Evidence that could "suggests otherwise" includes prior or internally-inconsistent IQ scores. *Id*.

### 2.  Application

School Psychologist Carly H. Griffin stated during Plaintiff's 2015 re-evaluation that "[Plaintiff's] performance on measures of intellectual ability has progressively declined as she has aged" since she scored 87 in 2007, 81 in 2012, and 59 in 2015. (T. 327.) Plaintiff's assessment in February 2021 showed a composite score of 74 (4th percentile) and a verbal intelligence score of 63 (7th percentile). (T. 358.)

Plaintiff's last assessment in August 2021 showed her reading and math levels were significantly below grade level, comparable to that of a second-grade student. (T. 207-08.) Academic testing showed a reading comprehension score at the 2nd percentile, writing at the 2nd

16

percentile, and math at the 1st percentile. (T. 348.) In *Gross v. McMahon*, 473 F. Supp. 2d 384 (W.D.N.Y. 2007), the court concluded that "a 3rd grade reading level is so low that it calls into question whether plaintiff is functionally illiterate, particularly in light of Plaintiff's other testimony that [she] had been place in special education classes." *Id*. at 389; *see also Skinner v. Sec'y of Health & Human Servs.*, 902 F. 2d 447, 450 (6th Cir. 1990) (concluding that a claimant who reads below a third-grade level is illiterate).

Here, there is a serious question as to whether Plaintiff is functionally illiterate. Despite ample evidence in the record documenting Plaintiff's learning disabilities, special education classes, and reading comprehension score in the 2nd percentile (T. 34, 207, 229, 314, 324, 327, 336, 340, 343, 350, 353, 355), the ALJ never addressed any limitations to reading at the hearing or in her decision. (T. 15-22.) Although the ALJ acknowledged that plaintiff reported one of her hobbies to be reading, there is nothing in the record to address the complexity of the material she reads, the frequency of her reading, how fast or slow she reads, or whether she has any assistance with reading. (T. 20.) An ALJ has an affirmative duty to develop the record "in light of the essentially non-adversarial nature of benefits proceeding." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). "The possibility that Plaintiff is functionally illiterate is further exacerbated in this case by a failure to adequately develop the record." *Campbell v. Astrue*, 713 F. Supp. 2d 129, 136 (N.D.N.Y. 2010) (remanding "for development of the record with respect to Plaintiff's abilities to read or write."); *see also Gross*, 473 F. Supp. 2d at 390 (ordering remand for failure to develop the record on the issues of plaintiff's literacy); *Carbaugh v. Colvin*, No. 14C7431 (SEC), 2016 WL 792299, at *4 (N.D. Ill. Mar. 1, 2016) (noting that, given evidence in the record, the ALJ "was obligated to develop the record to determine Plaintiff's literacy level.").

As set forth more fully below, the ALJ improperly relied on her own lay opinion to reject the existing IQ test scores or portions thereof. As the Western District of New York has recently held, where

> the ALJ questioned the validity of the only existing intelligence testing in the record, he should have ordered new testing. *See Anthony L. v. Comm'r of Soc. Sec.*, No. 22-CV-06387 (MJR), 2025 WL 44063, at *4 (W.D.N.Y Jan. 8, 2025). The failure to do so was error and the case must be remanded. *Id*. (citing *Johnston v. Comm'r of Soc. Sec.*, No. 1:10-CV-444 (TSB), 2012 WL 1030462, at *6 (S.D. Ohio 2012) (ALJ failed to develop the record by not ordering intelligence test where school records demonstrated claimant consistently performed poorly and where claimant testified she could not read or write well, could only perform simple math, and she performed limited household chores including sweeping, assisting with laundry, cooking simple meals and occasionally grocery shopping with her daughters.); *Stutts v. Astrue*, 489 F. Supp. 2d 1291, 1294-95 (N.D. Ala. 2007) ( ALJ failed to develop the record by not ordering an intelligence exam where claimant's childhood school records reflected IQ scores of 72 stating, "standardized IQ testing was essential to a determination of whether the [claimant] meets Listing 12.05; . . . the action will be remanded for the administration of appropriate standardized intelligence testing."); *Schwartz v. Halter*, 134 F. Supp. 2d 640, 646, 656-57 & n.18 (E.D. Pa. 2001) (ALJ erred in denying attorney's request for a consultative psychological examination where claimant's school records reflecting poor performance "produced sufficient evidence to put the ALJ on notice that he may have low intelligence"); *Johnson v. Barnhart*, No. 02-CV-6586 (CJS), 312 F. Supp. 2d 415, 426 (W.D.N.Y. Dec. 23, 2003) (remanding for ALJ to evaluate whether claimant met Listing 12.05 where school records reflected an IQ of 72); *Wilson v. Comm'r Soc. Sec.*, No. 17-CV-6695 (JWF), 2019 WL 1230015, at *3 (W.D.N.Y. Mar. 15, 2019) (quoting *Swain v. Asture*, No. 12-CV-6233 (MWP), 2014 WL 1315399, at *9 (W.D.N.Y Mar. 31, 2014)) (Regardless of validity, the earlier test scores were "still . . . material because they compel 'the ALJ to order an intelligence exam to assess petitioner's current intelligence level.'"); *see also Jazmin G. v. Comm'r of Soc. Sec.*, No. 22-CV-06155 (MJR), 2024 WL 4274840, at *5 (W.D.N.Y. Sept. 24, 2024) (school intelligence records are material in determining intellectual functioning).

*Anthony L. v. Comm'r of Soc. Sec.*, No. 22-CV-06387-MJR, 2025 WL 44063, at *4 (W.D.N.Y. Jan. 8, 2025).

The ALJ superficially mentioned Plaintiff's IQ score and the school's classification of plaintiff as a student with a disability, stating, "[t]he claimant's school records confirm she

received special education services.  Her classifications changed over time, and she was ultimately classified as a student with an intellectual disability.  This designation was *apparently* based upon a 2015 reevaluation." (T. 19.) (emphasis added). Despite this facial acknowledgment, the ALJ focused her decision on medical opinions that were supported only by the examiner's own clinical findings.  (T. 20.)

The record does not contain any other intellectual or cognitive testing contradicting Plaintiff's existing IQ test scores.  (T. 527-30.)  Neither of the agency consultants, Dr. Noia or Dr. Bhutwala, expressly rejected the existing IQ test results and it is unclear if they reviewed the IQ test results.[3]  (T. 59-61, 527-30.)  Further, they did not they administer their own cognitive testing of Plaintiff beyond Dr. Noia employing the very basics, such serial 3s and serial 7s, recent and remote memory skills. *Id*. at 528.  Further, Dr. Noia diagnosed a provisional unspecified learning disorder.[4]  (T. 529.)  Additional testing should be obtained because there exist inconsistencies in the record and the evidence in the record was insufficient to make a determination as to plaintiff's current cognitive function.

For the reasons stated above, the Court finds the record contained an ambiguity regarding Plaintiff's intellectual functioning based on the inconsistences of Plaintiff's IQ scores and Dr. Noia's findings that Plaintiff had an intellectual disorder that was provisional.  Under these circumstances, the Court finds the Commissioner's decision was not supported by substantial evidence.  Accordingly, this matter must be remanded for a consultative IQ test and/or further

---

[3] Dr. Bhutwala's report lists evidence that has been requested and received, but many of the items are listed "unknown."  (T. 59-61.)  Dr. Noia's report merely mentions that her results are consistent with Plaintiff's educational history but fails to mention IQ scores and which records were consistent.  (T. 527-30.)

[4] "Provisional," means that "there is a strong presumption that the full criteria will ultimately be met for a disorder, but not enough information is available to make a firm diagnosis."  AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 23 (5th ed. 2013).

cognitive testing and development of the record in a manner consistent with this Memorandum-Decision and Order.

## IV.   CONCLUSION

**WHEREFORE,** for the reasons stated herein, it is hereby

**ORDERED**, that the Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **GRANTED;** and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **DENIED;** and it is further

**ORDERED**, that the Commissioner's decision denying be **REVERSED** and **REMANDED** in accordance with this Memorandum-Decision and Order.

Dated: February 18, 2025
       Albany, New York

_____
Paul J. Evangelista
U.S. Magistrate Judge